IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITTANY SHANNE JEFFRIES and DEBRA ANN FOSTER, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF CHICAGO SD #299, AMANDLA CHARTER SCHOOL, and ILLINOIS STATE BOARD OF EDUCATION, <br><br> Defendants. | No. 13 C 3427 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dr. Debra Ann Foster has filed a *pro se* lawsuit on behalf of herself and her minor daughter, Brittany Shanne Jeffries, against the Chicago Board of Education (identified in the complaint as Chicago School District 299), Amandla Charter School, and the Illinois State Board of Education. Foster asserts claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(2)(A); 42 U.S.C. § 1983; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132. Foster is seeking: 1) reimbursement for that she alleges she incurred in securing for her daughter educational services that were unavailable to her at the Amandla School; 2) compensatory damages for her daughter's loss of a free and appropriate public education at the Amandla School from about January to June 2010 and June 2011 to October 2012; 3) court costs; and 4) an

order allowing her to "choose a school which will provide adequate training." Am. Compl., unnumbered page entitled "Relief." Foster is also seeking other compensatory and, possibly, punitive damages when she requests "remedies [sic] damages, in the amount of $250,000." *Id.*

Amandla and the Chicago Board of Education have moved to dismiss Foster's amended complaint under Federal Rule of Civil Procedure 12(b)(6), with the Board also adopting Amandla's motion to dismiss. The Board has also moved to step in for the School District 299 as a defendant. The Court grants the Board's motion to adopt Amandla's motion to dismiss as well as the Board's motion to substitute for the District as a defendant. *See* 105 ILCS 5/34-2.

For the reasons stated below, the Court grants the defendants' motions to dismiss.

## Background

### A. Events leading up to impartial due process hearing

The following facts are taken from Foster's amended complaint and from the decision by the hearing officer, which Foster references in her complaint. "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

On January 29, 2010, while Jeffries was attending the Amandla School, Foster asked the school to evaluate Jeffries for disabilities, with the aim of formulating an individual education program (IEP) for her. The IDEA defines an IEP as a "written statement for each child with a disability that is developed, reviewed, and revised," and

2

which must include, among other things, "a statement of the child's present levels of academic achievement and functional performance," "[a] statement of measurable annual goals, including academic and functional goals," "[a]n explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class." 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II) & (V). Foster alleges that the school did not respond to her request for an evaluation.

On June 11, 2010, a district representative helped Foster obtain an education plan for Jeffries under section 504 of the Rehabilitation Act. Section 504 plans are typically similar to IEPs. A little over a year later, on June 23, 2011, a special education case manager at the Amandla School informed Foster that Jeffries's section 504 plan was going to expire shortly unless Foster provided the school a current medical report for Jeffries. Foster alleges that "[t]he parents did not receive a 10 day notice of this decision nor were the parents given an opportunity to attend this decision meeting. The report was falsified stating the parents were in attendance and handed a copy of the report." Am. Compl. at 1. (It is unclear what report Foster is referencing.) Foster also alleges that the Amandla School failed to provide her information about her procedural rights.

In September 2011, Foster provided the Amandla School a current medical report for Jeffries. The report recommended an evaluation and an IEP to address Jeffries's "difficulty with working memory, and underlying language processing disability so that the Clinic can further evaluate her ADHD-Inattentive type." Id. at 2. The school evidently misplaced the medical report, so Foster provided a second copy in mid-September 2011.

3

In October 2011,[1] Foster again asked the school to evaluate Jeffries, with the aim of formulating an IEP for her. On November 10, 2011, the school gave Foster a notification stating that "[s]ince an evaluation was deemed appropriate or a re-evaluation is necessary to determine if your child continues to be a child with a disability, the process will begin upon the receipt of your written informed consent from the parent guardian." *Id.* at 3. Foster alleges, however, that the school failed to provide her the form by which a parent or guardian grants written informed consent, thereby preventing Jeffries from being evaluated. In lieu of the form, Foster sent the school on November 15, 2011 a "written request notice" found in a Parents' Handbook. Pl.'s Resp. Br. at 30.

On February 16, 2012, Foster attended a section 504 meeting with school officials, including a special education case manager, but they failed to finalize a section 504 plan for Jeffries. Foster also appears to allege that she attended another similar meeting, with the same outcome, on February 20, 2012.

**B.    Administrative due process hearing**

Foster alleges that she requested an impartial due process hearing before the Illinois State Board of Education on March 20, 2012 and that she filed an amended due process complaint on October 21, 2012. The hearing decision and order states that Foster made the initial request on October 9, 2012, the amended request on October 12, 2012, and a second amended request on November 13, 2012.

Foster asked the hearing officer to find that the school district had neglected to

---

[1] The complaint places this event in October 2012, *see* Am. Compl., Attachment at 2, but the context indicates that 2012 is a typographical error and that the correct date is 2011.

4

provide Jeffries a free an appropriate public education as required by law by, among other things: failing to evaluate her; failing to develop an IEP to address her needs; failing to provide related services to address those needs; failing to fund an independent educational evaluation procured by Foster when the school did not conduct one; failing to provide adequate written notice of certain events relevant to the IEP process; and failing to conduct a "resolution meeting."

The due process hearing occurred on December 20-21, 2012. At the hearing, Foster requested the following relief:

- a ruling that the school district had failed to appropriately evaluate Jeffries;

- an order for speech and language evaluations;

- reimbursement for an evaluation for which Foster had paid;

- placement of Jeffries at an educational facility of Foster's choosing;

- compensatory education, with various particulars.

*See* Due Process Hrg. Decision at 3.

The hearing officer issued his decision on January 7, 2013. He found that the report that Foster provided to the school in September 2011, compiled by Dr. Jean Aschkenasy, a clinical psychologist, "recommended a full case study including a full speech and language evaluation particularly in the areas of language processing as well as working memory." *Id.* at 5. The officer concluded that based on Dr. Aschkenasy's report, along with teacher assessments and student progress reports, the school had sufficient evidence as of November 2011 "to suspect that the student was a child with a disability in need of special education services." *Id.* at 14. The hearing officer further found that although it was disputed whether the school district had obtained informed

5

consent to conduct an evaluation, it was apparent that the paperwork had "[fallen] through the cracks," and as a result, the district had not conducted an initial eligibility determination. *Id.* Thus Jeffries was "without an IEP and without services and related services relative to her significant deficits." *Id.* The officer concluded that the district's failure to show it made reasonable efforts to obtain informed consent constituted a procedural violation of the IDEA "which has substantially impeded the students [sic] right to a Free and Appropriate Public Education (FAPE) and caused a deprivation of educational benefit to the student for over a year's period." *Id.* at 15.

The hearing officer further concluded that although it was clear that Jeffries had a diagnosis of "ADHD, inattentive type," there was insufficient evidence to show that this was impairing her academic progress. *Id.* He stated that "[t]his will be an issue for the IEP team to consider and make such a determination, if appropriate." *Id.* The officer also determined that Jeffries should have been found eligible to receive speech/language services based on Dr. Aschkenasy's evaluation. He concluded that it would be appropriate to require compensatory education as to speech and language for a twelve month period, as well as twenty-five intensive sessions devoted to her working memory and related deficits. *Id.* at 16. The purpose of this, the hearing officer stated, was to "bring [Jeffries] up to the level [where] she potentially would have been" had the district acted appropriately. *Id.*

The hearing officer also ordered an evaluation of Jeffries to determine whether she had a disability and was in need of special education and other services (aside from her demonstrated need for speech / language services), to be followed by development of an IEP if she was found to be in need of special education. *Id.* at 16-17. To this end,

6

the officer set out a detailed schedule by which this was to be accomplished. Specifically, he ordered the school district to provide Foster with appropriate written notice and consent forms by January 18, 2013 and instructed Foster to sign and return the forms by January 23, 2013. The hearing officer stated that "[if]f [Foster] fails or declines to sign the appropriate consent for the initial eligibility determination or any other written informed consent form, the School District need go no further and does not need to provide any special education services for the student." *Id.* at 23-24.

The hearing officer went on to state that if Foster signed and returned the written informed consent forms to the school district, the school district was to hold an eligibility determination meeting to designate Jeffries eligible for special services "in the category of Speech or Language Impairment" and to ascertain whether she was eligible for special services in any other categories. *Id.* at 24. If necessary, the school district was to provide Foster with a written informed consent form authorizing it to evaluate Jeffries by February 9, 2013, with Foster to sign and return the form by February 18, 2013. *Id.* Any follow-up evaluations were to be done by no later than March 20, 2013. Finally, the hearing officer directed the school district to convene, by March 27, 2013, an IEP meeting with Foster and, if appropriate, Dr. Aschkenasy and Arnell Brady (a speech pathologist who had performed an evaluation of Jeffries for Foster)—both at the school district's expense—within thirty days of the district's receipt of Foster's signed consent. Finally, the hearing officer set a deadline of April 3, 2013—assuming receipt of the necessary consent forms from Foster—for development of an IEP for Jeffries. *Id.*

As indicated earlier, the officer found that Jeffries was entitled twenty-five sessions with Brady (the speech pathologist) over a one-year period at the school

7

district's expense, as well as transportation or reimbursement for transportation to and from his office. *Id.* at 24-25. The hearing officer concluded that Foster was not entitled to reimbursement for the independent evaluations she had obtained from Brady and Dr. Aschkenasy. *Id.* at 25. He determined that applicable regulations required Foster to request in advance an independent evaluation at public expense and found there was no evidence that Foster had made such a request. *Id.* at 19.

Finally, the hearing officer found that Foster had presented no evidence that would support a finding that she should be permitted to place Jeffries in an educational facility of her choosing. *Id.* at 25. The officer stated: "[n]o eligibility determination has been made other than that contained herein. No IEP has been developed for the student. No determination has been made as to the student's Least Restrictive Environment." *Id.* at 23. The officer concluded that the request for an alternative placement was "not supported by any evidence presented at the hearing." *Id.*

The officer stated that "[t]his decision shall be binding upon the parties unless a civil action is commenced. Any party to this hearing aggrieved by this decision has the right to commence a civil action with respect to the issues presented in the hearing." *Id.* at 26.

Following the hearing officer's decision, it appears that Foster declined to sign and return the consent forms needed to start the IEP-related evaluation process that the officer had ordered. As a result, that process never got going. It also appears that as of the end of the 2012-2013 school year, Jeffries was no longer a student at the Amandla School and that Foster had enrolled her at a different local charter school.

8

**C.     This lawsuit**

Foster, acting *pro se*, filed this lawsuit in May 2013. On October 7, 2013, the Court granted Foster's motion for attorney representation and appointed an attorney from the Sidley Austin firm to represent her. The Court relieved the attorney of the appointment on November 19, 2013. Foster did not file a motion seeking appointment of another attorney.

On December 17, 2013, Foster filed a *pro se* amended complaint. In her amended complaint, Foster requests a finding that her and Jeffries' rights were violated, as well as the following relief:

- $20,000 for "[r]eimburse[ment] for outside services for Speech/Language and Occupational Therapy the school failed to implement";

- $5,000 for reimbursement for transportation during the speech/language and occupational therapy;

- reimbursement for the appearances at the hearing of her independently-retained experts;

- compensatory damages for denial of a free and appropriate education;

- "[r]elief in addition, remedies damages, in the amount of $250,000.00 plus court costs"; and

- allowing her to choose a school that would provide adequate training for Jeffries.

*See* Am. Compl, unnumbered page entitled "Relief."

## Discussion

As stated earlier, defendants have moved to dismiss Foster's amended complaint

under Rule 12(b)(6). "In resolving a 12(b)(6) motion, we take all well-pled facts as true, but after assuming the veracity of all these facts, the court must assess whether those factual assertions 'plausibly give rise to an entitlement to relief.'" *Fuqua v. SVOX AG*, 754 F.3d 397, 400 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court also appropriately considers the hearing officer's decision, which Jeffries references in her complaint and which is integral to her claim. *See, e.g., Bogie v. Rosenberg*, 713 F.3d 603, 609 (7th Cir. 2013).

Amandla and the Board argue that Foster has failed to state a claim, for four reasons: 1) Foster, as a *pro se* litigant, may not bring any claims on behalf of Jeffries; 2) Foster has not alleged injuries to herself under the IDEA, section 1983, section 504 of the Rehabilitation Act, or the ADA; 3) she failed to exhaust administrative remedies under the IDEA before filing the present action; 4) she was not aggrieved by the hearing officer's decision and order, and the IDEA does not allow the remedies that Foster is seeking.

**A.    Foster's claims on behalf of Jeffries**

Foster has brought claims on behalf of Jeffries under each of the statutes under which she has sued. Amandla and the Board contend that none of these claims is viable because a non-lawyer parent may not represent her minor child on a *pro se* basis. The Seventh Circuit has held exactly that. In *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 532 (7th Cir. 2006), the court concluded that the plaintiff could not proceed *pro se* with an IDEA action on behalf of her minor child. And in *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001), the court concluded that the plaintiff "was free to represent himself, but as a non-lawyer he has no authority to

appear as [his minor son's] legal representative."  As the Seventh Circuit has explained, "[t]he choice to appear *pro se* is not a true choice for minors who under state law . . . cannot determine their own legal actions.  There is thus no individual choice to proceed *pro se* for courts to respect . . . ."  *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (7th Cir. 1990).  For this reason, the Court dismisses all of Foster's claims on behalf of Jeffries—though this dismissal must be without prejudice because the Court's decision involves not the merits but rather the fact that Foster, acting *pro se*, is not a proper legal representative of Jeffries for any claims she might have.

**B.    Foster's claims on her own behalf**

**1.    Rehabilitation Act and ADA**

Foster says that she asserts claims on her own behalf under section 504 of the Rehabilitation Act and Title II the ADA.  Specifically, she says:  "Plaintiffs' complaint has always being [sic] predicated on IDEA in its entirety 1400 et.al., 1983, Americans With Disabilities Act (ADA), and the 504 Rehabilitation."  Pl.'s Resp. at 14.

Section 504 of the Rehabilitation Act states that

[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Seventh Circuit has found that "[o]ther than some minor differences . . . the statutes are coextensive."  *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).  "We have held previously that the

11

standards applicable to one act are applicable to the other. Title II of the ADA was modeled after § 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other." *Washington v. Ind. High Sch. Athletic Ass'n Inc.*, 181 F.3d 840, 845 n. 6 (7th Cir. 1999). For these reasons, in addressing defendants' motions to dismiss, the Court deals with Foster's section 504 and Title II claims together.

"To prevail on his claim for discrimination under the [Rehabilitation] Act, [plaintiff] must prove that . . . he is disabled as defined by the Act . . . ." *Knapp v. Northwestern Univ.*, 101 F.3d 473, 478 (7th Cir. 1996). Foster, of course, does not claim to have a disability. Both the statutory text and the established elements of a claim under section 504 and Title II indicate that unlike the IDEA, neither of these statutes allows a parent to obtain for herself relief for a statutory violation that aggrieved the parent's disabled child. As discussed earlier, the holding in *Winkelman* is limited to IDEA claims. *See Woodruff v. Hamilton Twp. Pub. Schs.*, 305 F. App'x 833, 836 (3rd Cir. 2009), the court held that "[t]he District Court properly concluded that, under *Winkelman* . . . the [plaintiffs] may prosecute their legally cognizable interests in B.W.'s FAPE without an attorney, but *Winkelman* is limited to the IDEA context . . . .").

Foster cannot maintain a claim on her daughter's behalf under section 504 or Title II, and as a non-disabled person, she cannot maintain a claim on her own behalf. The Court therefore dismisses Foster's claims under these statutes. For this reason, the Court need not rule on defendants' argument that Foster's claims under the IDEA supersede her claims under section 504 and the ADA.

### 2. 42 U.S.C. § 1983

Construing Foster's *pro se* complaint liberally, as the Court is required to do, the Court understands her to allege that Amandla failed to: 1) evaluate Jeffries for disabilities in January 2010, 2) provide notice of or the opportunity to participate in the decision to terminate Jeffries's section 504 plan in June 2011, 3) provide Foster with the informed consent forms needed to begin evaluating Jeffries in November 2011, and 4) finalize Jeffries's new section 504 plan in February 2012. The Court further understands Foster to have alleged that these failures constituted procedural violations of the IDEA that deprived her of her substantive right to a free and appropriate public education for her child. Foster seeks to recover damages for these deprivations from the Board and Amandla under section 1983.

Foster has not sued any individuals who she claims caused these deprivations of her rights. Rather, she has sued only the Board and Amandla. There is no *respondeat superior* liability under section 1983. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This is so whether the defendant is a governmental entity, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978), or a private entity, *see, e.g., Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (citing *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1983)). To establish liability of an entity under section 1983, the plaintiff must show that a policy or custom of the entity was the moving force behind the constitutional violation. *See Monell* 436 U.S. at 690-91; *Johnson*, 515 F.3d at 782.

Foster has not alleged that the defendant entities' violations implemented or executed any formal policies of those entities. Nor has she alleged that the violations

13

were so entrenched or wide-spread that they constituted a custom with the force of law. Thus she cannot maintain a claim under section 1983 against the Board or Amandla. *See Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 903-04 (7th Cir. 1996).

    **3.    IDEA**

        **a.    Foster's ability to bring an IDEA claim on her own behalf**

Foster has also brought claims on her own behalf under the IDEA. In *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007), Supreme Court made clear that parents enjoy rights under the IDEA independent of the rights enjoyed by their children and that the parents' rights are enforceable in federal court. *Id.* at 526. The Court found that many provisions of the IDEA confer rights on parents. For example, parents serve as members of the team developing the IEP, which must take parents' education-related concerns into account and revise the IEP to reflect relevant information supplied by them. *Id.* at 524. The IDEA also requires States to "'establish and maintain procedures . . . to ensure that children with disabilities *and their parents* are guaranteed procedural safeguards with respect to the provision of a free appropriate public education.'" *Id.* (quoting § 1415(a)) (emphasis added). Further, parents must be part of any group that decides which educational facility in which to place their child. *Id.* Another provision, section 1415(e)(2)(A)(ii), "refer[s] to 'a parent's right to a due process hearing.'" *Id.* at 527. The Court concluded in *Winkelman* that the IDEA "creates in parents an independent stake not only in the procedures and costs implicated by this process but also in the substantive decisions to be made . . . . a parent may be a party aggrieved for purposes of §1415(i)(2) with regard to any matter implicating these rights." *Winkelman*, 550 U.S. 531 (internal quotation marks omitted).

14

Based on *Winkelman*, the Court concludes that Foster may proceed *pro se* to vindicate her own procedural and substantive rights under the IDEA.

### b. Exhaustion of administrative remedies

Defendants contend that Foster's IDEA claims on her own behalf should be dismissed because she failed to exhaust administrative remedies. Specifically, they argue that by failing to sign and return the informed consent forms that the hearing officer ordered Amandla School to send her, she failed to exhaust administrative remedies. Defs.' Opening Br. at 11. It appears to be undisputed that Foster never returned the signed forms.

The IDEA states that

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f). The Seventh Circuit has interpreted this provision of the IDEA to mean that "any pupil who wants relief that is available under the IDEA must use the IDEA's administrative system, even if he invokes a different statute." *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996) (internal quotation marks omitted). There is no reason to believe that this same requirement does not apply to a parent asserting a claim under the IDEA. Thus Foster was required to exhaust administrative remedies.

As described earlier, Foster sought and obtained an impartial due process hearing under section 1415(f). The hearing was conducted by the Illinois State Board of

Education rather than a local educational agency. As a result, the hearing officer's order was the final administrative decision; Foster was not entitled to appeal that order within the IDEA's administrative system. *See* 20 U.S.C. § 1415(g)(2). Rather, her recourse at that point was to file a civil action. *See id.* § 1415(i)(2)(A). In short, the hearing officer's decision and order marked the completion of the IDEA's administrative process for Foster.

Foster's apparent refusal to sign and return the informed consent forms, which she received pursuant to the hearing officer's decision and order, signify not a failure to exhaust administrative procedures but rather her disagreement with the outcome of the impartial due process hearing. Foster completed the administrative hearing process. If she disagreed with the officer's decision, she was entitled to appeal from that decision, which is what she did. Her refusal to pursue the IEP process that the hearing officer set out might affect her ability to obtain some types of relief, but it does not preclude her from filing this lawsuit.

### c. Whether Foster was aggrieved by the administrative decision

The IDEA permits a party "aggrieved by" the administrative decision to file suit in district court. 20 U.S.C. § 1415(i)(2)(A). Defendants argue that Foster got what she asked for from the hearing officer and thus was not "aggrieved" by his decision.

The Court begins its discussion of this point by reviewing the relief that Foster requested at the due process hearing:

1) a ruling that the school district had failed to appropriately evaluate Jeffries;

2) an order for speech and language evaluations;

3) reimbursement for an evaluation for which Foster had paid;

16

4) placement of Jeffries at an educational facility of Foster's choosing;

5) compensatory education, with various particulars.

*See* Due Process Hrg. Decision at 3.

There is no question that the hearing officer ordered at least some of the relief Foster sought. Specifically, he ruled that the school district had not conducted an appropriate evaluation; he found that the evidence the school district had before it showed that Jeffries needed speech and language-related services; he required further evaluations once Foster signed the necessary consent forms; and he ordered compensatory education to make up for what Jeffries had missed. As such, it appears that the hearing officer's decision satisfied requests 1, 2, and 5 listed above.

The hearing officer did not order Jeffries to be placed at a facility of her choosing (request 4). That said, Foster was not aggrieved by this. If appears to be undisputed that Foster enrolled Jeffries in a different charter school, one that Foster preferred. This precludes a finding that she was aggrieved by the hearing officer's decision in this regard.

The hearing officer addressed Foster's request for reimbursement for the evaluations she had obtained from speech pathologist Brand and psychologist Dr. Aschkenasy (request 3). He concluded that Foster was not entitled to reimbursement because she had not followed the process prescribed by regulation as a prerequisite for having such evaluations conducted at public expense. This conclusion was unquestionably correct. *See* 34 C.F.R. § 300.502(b) (stating that a parent has the right to an independent evaluation at public expense hearing if the parent first requests this and other conditions are met). Thus even if Foster was aggrieved by this aspect of the

17

decision, she is not entitled to obtain the requested relief in this Court.

In this lawsuit, Foster also seeks reimbursement of about $20,000 that she says she paid for speech and language services for Jeffries during the period when the school was on notice of her need for the services but failed to provide them. Foster also asks for reimbursement of transportation costs of $5,000 associated with obtaining those same services. Foster cannot say, however, that she was aggrieved by the hearing officer's decision on this point, because that was not part of what she asked the hearing officer to award. In other words, the hearing officer did not deny a request for this relief, because Foster did not ask for it. Looking at it another way, it would appear that Foster failed to exhaust her administrative remedies as to this element of the relief she seeks, as she did not make this request during the administrative hearing process.

Foster also asks the Court to order reimbursement for the expenses associated with the appearances at the administrative due process hearing of her independent experts, Mr. Brady and Dr. Aschkenasy. There is no indication that Foster sought this relief during the administrative hearing process. The Court therefore reaches the same conclusion that it just discussed regarding reimbursement for those same professionals' services; Foster was not aggrieved by the hearing officer's decision because she did not request this relief before the hearing officer.

### d. Additional relief that Foster seeks

Finally, Foster also seeks an award of compensatory damages and "remedies" damages. Compensatory damages are not available under the IDEA. *See Charlie F.,* 98 F.3d at 991 ("Charlie says that he wants compensatory money damages, which the IDEA does not authorize). If and to the extent Foster seeks punitive damages, that

relief is unavailable as well.  See, e.g., Sellers by Sellers v. Sch. Bd. of City of Mannassas, 141 F.3d 524, 528 (4th Cir. 1998); Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996).

## Conclusion

The Court terminates as moot defendants' motions to dismiss plaintiffs' original complaint [docket nos. 20 & 22].  Plaintiff Debra Ann Foster's motion to proceed *in forma pauperis* [docket no. 17] was previously granted and is therefore terminated. Finally, for the reasons stated above, the Court grants defendants' motions to dismiss the amended complaint [docket nos. 37 & 38] and directs the Clerk to enter judgment dismissing plaintiff Debra Ann Foster's claims with prejudice and plaintiff Brittany Shanne Jeffries' claims without prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 13, 2014