# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANY SHANE JEFFERIES and DEBRA ANN FOSTER, | ) ) ) | |
| Plaintiff, | ) ) | No. 13 C 3427 |
| v. | ) ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO SD #299, AMANDLA CHARTER SCHOOL and ILLINOIS STATE BOARD OF EDUCATION, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

Maria Valdez, United States Magistrate Judge.

This matter has been referred to this Court for a Report and Recommendation on Plaintiff Dr. Debra Ann Foster's Motion to Amend and Redress Plaintiff 1983 claim [Doc. No. 82] and Motion for Clarity of Judge Maria Valdez Ruling. [Doc. No. 83] The Defendant has also filed a Motion to enforce settlement agreement [Doc. No. 90], which is considered together with Plaintiff's motions. For the reasons that follow, this Court respectfully recommends that the district court deny Plaintiff's motions and grant Defendants' motion.

## BACKGROUND

In May 2013, Dr. Debra Ann Foster filed a complaint on behalf of herself and

her minor daughter, Brittany Shane Jeffries,[1] against the City of Chicago Board of Education, Amandla Charter School, and the Illinois State Board of Education. [Doc. No. 1] Foster asserted claims—both on behalf of Jeffries and on behalf of herself—under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(2)(A); 42 U.S.C. § 1983; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132. *Id.* at 5. In her complaint, Foster alleged that her daughter had been denied a free and appropriate public education for portions of 2010, 2011, and 2012. *Id.* at 9-12. Foster sought various forms of relief, including reimbursement for educational services which she alleged the school had denied Jeffries and for which she had personally paid, as well as compensatory and punitive damages. *Id.* at 16.

## A.    The District Court's Original Decision

The Defendants moved to dismiss the complaint, and the district court granted the motion both with respect to the claims raised on behalf of Jeffries and with respect to Foster's own claims. *Jefferies v. City of Chicago*, No. 13 C 3427, 2014 WL 3954237, at *10 (N.D. Ill. Aug. 13, 2014), *aff'd in part, vacated in part, and remanded sub nom. Foster v. Bd. of Educ. of City of Chicago*, 611 F. App'x 874 (7th Cir. 2015). First, with respect to Foster's claims on behalf of her daughter, the district court found that Foster, a non-lawyer, had no authority to appear as her

---

[1] This case is styled *Jefferies et al v. City of Chicago et al.* However, in her filings, Foster has consistently used the spelling "Jeffries" to refer to her daughter. The Court will adopt the latter spelling when referring to Foster's daughter in a personally.

daughter's legal representative. *Id.* at *5. However, the Court's dismissal of these claims was "without prejudice because the Court's decision involves not the merits but rather the fact that Foster, acting pro se, is not a proper legal representative of Jeffries for any claims she might have." *Id.*

With respect to Foster's own claims, however, the district court "direct[ed] the Clerk to enter judgment dismissing [those] claims with prejudice." *Id.* at *10. First, with respect to the Rehabilitation Act and the ADA, the court found that Foster could not maintain claims on her own behalf under those statutes because she herself was not disabled. *Id.* at *6.

With respect to 42 U.S.C. § 1983, the district court found that—because Foster had sued only government and private entities and not individuals—she was required to show "that a policy or custom of the entity was the moving force behind the constitutional violation" in order to state a claim. *Id.* at *7 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) and *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir.2008)). Because Foster had not alleged that the claimed violations arose from any policy or custom of the defendant-entities, the court found that Foster could not "maintain a claim under section 1983 against the Board or Amandla." *Id.*

Finally, with respect to the IDEA, the district court found that, although Foster could maintain IDEA claims on her own behalf, she had no claims for relief under the Act in the case at hand. In pertinent part, the court found that—while

Foster sought reimbursement for "about $20,000" she had expended on services for her daughter that she claimed the school had wrongly refused to provide—Foster had not asked for that relief at the administrative level. Accordingly, the court found that Foster either was not "aggrieved" by the hearing officer's decision, *see* 20 U.S.C. § 1415(i)(2)(A), or that she had failed to exhaust her administrative remedies as to this aspect of the claim, and therefore that she could not maintain her personal IDEA claims. *Id.* at *9.

## B. Appeal to the Seventh Circuit

Foster appealed to the Seventh Circuit, which reversed "as to Foster's own claims under the Individuals with Disabilities Education Act," but affirmed the judgment in all other respects. *See Foster*, 611 F. at 879.

First, with respect to the claims Foster had raised on Jeffries's behalf, the Seventh Circuit affirmed the district court's judgment. It held that "the district court properly dismissed Foster's daughter's purported claims" because, as a pro se party, Foster could not litigate those claims on her daughter's behalf. *Id.* at 877.

With respect to Foster's non-IDEA claims, the Seventh Circuit also affirmed the district court's judgment. The court noted that "Foster [did] not develop challenges to the district court's dismissal of her § 504 [of the Rehabilitation Act] and § 1983 claims." *Id.* at 877. Accordingly, the Seventh Circuit did not analyze these claims further in its opinion.[2]

---

[2] The Seventh Circuit did not explicitly address Foster's personal claim under the ADA; Foster, however, has not made any arguments regarding this claim on remand.

With respect to the IDEA, however, the Seventh Circuit reversed, holding that "[t]he district court erred . . . in dismissing Foster's own claims" under the Act. *Id.* at 878. Although agreeing that Foster failed to specifically request reimbursement for her out-of-pocket expenditures at the administrative level, the Seventh Circuit held that these expenditures should have been considered part of her request for compensatory education, and need not have been specifically raised. *Id.* at 878. Therefore, the Seventh Circuit determined that Foster had stated a claim for relief in her personal capacity under the IDEA. *Id.*

"Accordingly, as to Foster's own claims under the Individuals with Disabilities Education Act," the judgment was vacated and remanded for "further proceedings consistent with [the Seventh Circuit's] decision." *Id.* at 879. "In all other respects," however, the Court affirmed the judgment of the district court. *Id.*

## C.     **Proceedings on Remand and Settlement Negotiations**

On remand, the case was referred to this Court for the purpose of holding a settlement conference, [Doc. No. 76] which was held on September 15, 2015. [81] The district court appointed settlement counsel for Foster, [Doc. No. 80], who participated in the settlement negotiations along with Foster herself. The defendants were also represented by counsel.

At the conclusion of the settlement conference, the parties produced a document entitled "Settlement checklist/term sheet" ("settlement checklist"). In the section entitled "Payment of Money," the settlement checklist specified that a sum of $8,100 was to be paid by the Defendants to Foster. [Doc. No. 90 Exhibit B, at 3.]

Under "Payment terms," the parties specified "execution of separate settlement agreement and release." *Id.* In the section entitled "Effective Date," the parties circled "Yes" next to a statement reading "A binding agreement today." *Id.* at 3. And in the section entitled "Select a release option," the parties circled "One Way From Plaintiff(s) to Defendant(s)" and, under "Scope of Release," circled "All claims raised in the litigation" and "All existing claims, whether or not raised in the litigation." *Id.* at 1. The agreement was signed by settlement counsel on behalf of Foster and by the Defendants' attorneys on behalf of the Defendants. *Id.* at 3.

One week after the settlement agreement was reached, however, Foster—without the assistance of settlement counsel—filed two motions related to the agreement. In her Motion for Clarity of Judge Maria Valdez ruling, Foster asserted that "[t]he matter before the Honorable Maria Valdez was for settlement of IDEA-out of pocket expenses incurred by Debra Foster (Parent of B. S Jeffries) for the school/district violations. Solely for the purpose of Plaintiff in her own rights and this settlement did not include the 1983 . . . ." [Doc. No. 83 at unnumbered 1-2.] Foster asserted that she had "only agreed to the settlement of IDEA out of pocket expenses no other issues were argued," *id.* (emphasis omitted), and asked the Court to clarify its earlier order returning the case to the district judge, [Doc. No. 81], which had stated that "[a]ll matters relating to the referral of this action having been resolved, the case [was] returned to the assigned judge." *Id.* On the same day, Foster filed a "Motion to Amend and Redress Plaintiff 1983 Claim" in which she

outlined arguments on claims under section 1983 and asked for a jury trial on those claims. [Doc. No. 82.]

The district judge then referred the case to this Court for holding proceedings related to the motions. [Doc. No. 86.] After referral, Defendants filed a motion to enforce the settlement agreement, to which they attached the settlement checklist. [Doc. No. 90 & Exhibit B] In their Motion, Defendants argued that the only claims before the district court on remand were Foster's personal IDEA claims. *Id.* at 4. They contended that the settlement checklist constituted a binding and enforceable settlement of that claim and, as a result, no further claims remained in the suit. *Id.* Accordingly, Defendants argued that the agreement outlined in the settlement checklist should be enforced. *Id.* In her response, Foster—again filing on her own behalf—restated the claims and arguments made in her previous two motions and argued that she had not agreed to the release provision of the settlement checklist and that the agreement therefore was not enforceable. [Doc. 91 at 4-5.] Foster again asked that she be granted a jury trial on claims under section 1983. *Id.* at 7.

The Court held an evidentiary hearing on all three motions on November 18, 2015.[3] [Doc. No. 92.] Foster personally appeared at the hearing and represented herself. Although no longer representing Foster, settlement counsel also appeared.

---

[3] Although Defendants' motion to enforce the settlement agreement was filed after the district judge's referral of Foster's motions to the magistrate, the case was referred for the purpose of holding proceedings related to those original motions. [Doc. No. 86] Since the motion to enforce was filed in direct response to Foster's motions, the Court considers it a "proceeding[] related to the motions" explicitly referred and, therefore, within the scope of the district court's referral order.

The Defendants appeared through counsel. At the hearing, the parties were each given an opportunity to introduce additional evidence and to call additional witnesses, but neither party opted to do so. [11/18/15 Hearing Tr. (hereinafter "Tr.") at 5.]

At the hearing, Foster agreed that a settlement had been reached with respect to her IDEA claim for "out-of-pocket" expenses. [Tr. at 2, 7-8.] However, Foster argued that she believed she was also entitled to punitive damages under the IDEA, and that she had not agreed to settle that claim or release any other claims as represented in the settlement checklist. [Tr. 8-9.] Instead, Foster advised that settlement counsel had not reviewed the terms of the settlement outlined in the settlement checklist with her, but had nonetheless entered into the agreement on her behalf. *Id.* Settlement counsel, however, advised that she had discussed the terms of settlement as outlined in the settlement checklist with Foster prior to its execution. [Tr. 9] On questioning from the Court, settlement counsel confirmed that her signature on the settlement checklist represented the authority she believed she had received from Foster to settle the case. *Id.*

Defendants reiterated their argument that the settlement checklist represented an agreement reached between the parties with regard to Foster's claims and that the agreement was enforceable. Defendants argued that the only claims remaining in the case at the time of settlement were Foster's personal IDEA claims, and that—because the only remedy she had sought with regard to those claims was reimbursement of her out-of-pocket expenses—those claims had been

settled and there were no further claims remaining in the case. [Tr. at 5-6.]

## DISCUSSION

In her Motion for Clarity of Judge Maria Valdez ruling, Foster asks the Court to clarify that the only claims at issue in the settlement agreement were her personal IDEA claims. [Doc. No. 83] Despite this assertion, however, in her Motion to Amend and Redress Plaintiff 1983 claim Foster asks the Court to address the merits of that claim. [Doc. No. 82] In Defendants' Motion to enforce the settlement agreement, they argue: that the only claims remaining in the case on remand from the Seventh Circuit were Foster's personal IDEA claims; that those claims were limited to reimbursement for "out-of-pocket" expenses; that the parties agreed to settle those claims; and accordingly that there are no further claims in this case for the Court to address. [Doc. No. 90] Because only Foster's personal IDEA claims were before the Court after remand from the Seventh Circuit, her Motion to redress Plaintiff 1983 Claim [Doc. No. 82] must be denied.

At the evidentiary hearing, Foster made clear her contention that the agreement as memorialized in the settlement checklist is invalid because settlement counsel did not have authority to enter into the agreement on the terms contained therein. But because settlement counsel was acting within her authority and the agreement is otherwise enforceable, and because—regardless of that authority—Foster herself formed a valid contract on those terms, Defendants' Motion to enforce the settlement agreement [Doc. No. 90] is granted and the Motion for Clarity of Judge Maria Valdez Ruling [Doc. No. 83] is denied as moot.

## I. ONLY FOSTER'S PERSONAL IDEA CLAIMS REMAINED BEFORE THE COURT ON REMAND FROM THE SEVENTH CIRCUIT.

The parties appear to agree that the only claims before the Court on remand from the Seventh Circuit were Foster's personal claims under the IDEA: this is the premise both of Defendants' Motion to Enforce, [Doc. No. 90 at 4], as well as Foster's own Motion for Clarity of Judge Maria Valdez Ruling. [Doc. No. 83 at unnumbered 1-2.] In fact, in her response to Defendants' Motion to enforce the settlement agreement, Foster explicitly agreed that the "Court of Appeals vacated the district court's dismissal of Plaintiff Foster's own claims under the IDEA, while affirming the judgment in all other respects." [Doc. No. 90 at 2.]

The understanding of the parties on this point is correct: in the initial proceedings before the district court, the judge dismissed all of Foster's personal claims with prejudice. *Jefferies*, 2014 WL 3954237, at *10. This included not only Foster's personal IDEA claims, but also her claims under section 1983, as well as all other claims. *Id.* On appeal to the Seventh Circuit, Foster challenged *only* the dismissal of her personal claims under the IDEA: the Seventh Circuit explicitly noted that "Foster [did] not develop challenges to the district court's dismissal of her § 504 and § 1983 claims." *Foster*, 611 F. App'x at 877. While the Seventh Circuit found that the district court had in fact erred in dismissing "Foster's own claims under the Individuals with Disabilities Education Act" and remanded for reconsideration of those claims, it affirmed the district court's judgment—of dismissal with prejudice—for all other claims. *Id.* at 879.

Therefore, the only claims left in the case on remand to the district court were Foster's personal claims under the IDEA, and the district court would be powerless to take any action with respect to any claims under section 1983. *See United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("If the opinion [of a court of appeals] identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error."); *see also Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000) ("An argument bypassed by the litigants, and therefore not presented in the court of appeals, may not be resurrected on remand and used as a reason to disregard the court of appeals' decision.") (quoting *Barrow v. Falck*, 11 F.3d 729, 730 (7th Cir.1993)).

## II.   THE PARTIES AGREE THAT THE SETTLEMENT AGREEMENT DISPOSED OF THE ONLY REMAINING CLAIMS IN THIS CASE.

The parties also agree that Foster's personal claims under the IDEA were disposed of by the settlement agreement. Foster's Motion for Clarity of Judge Maria Valdez Ruling explicitly states that Foster believed the matter before the parties at the settlement conference to be "settlement of IDEA-out of pocket expenses." [Doc. No. 83 at unnumbered 2.] Furthermore, Foster stated at the evidentiary hearing that, in reaching a settlement agreement, the parties "negotiated on an expense that I actually paid out of my pocket." [Tr. 8] While at the hearing Foster expressed her belief there may have been other expenses for which she was not made whole as a result of the settlement agreement, she nonetheless affirmed that her personal

IDEA claims for her out-of-pocket expenses had been settled, stating that, "since we did agree to that [settlement], I will accept it." [Tr. 7-8] This is consistent with the Defendants' position, both in their Motion to enforce the settlement agreement, [Doc. No. 90 at 4], and at the hearing. [Tr. 5-6].

In her briefing, Foster states that she settled her IDEA claim for "out-of-pocket" expenses. *See* [Doc. No. 83 at unnumbered 1-2; Doc. No. 91 at 4] At the evidentiary hearing, Foster clarified that she believed other remedies—aside from reimbursement for those expenses—were available to her under the IDEA, that the settlement agreement had not disposed of those claims, and therefore that her other claims under the IDEA were still properly before the Court. [Tr. at 3, 8.] When asked to specify the remedies she believed were still available, however, Foster only identified punitive damages. [Tr. 8.] But, as the district court ruled in its decision prior to Foster's appeal to the Seventh Circuit, punitive damages are not available under the IDEA. *See Jefferies*, 2014 WL 3954237, at *10 ("If and to the extent Foster seeks punitive damages [under the IDEA], that relief is unavailable as well."); *see also Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996) (holding that IDEA does not authorize "compensatory money damages"); *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009) (holding punitive damages not available under IDEA and collecting cases of other courts of appeal so holding)). The Seventh Circuit's opinion did not affect this portion of the district court's decision.

Therefore, because Foster agrees that the settlement agreement disposed of

her IDEA claim for "out-of-pocket expenses," and because the other remedies she alleges she had claimed under the IDEA are not available under the statute, there is simply no basis for Foster to now argue that her personal claims under the IDEA were not settled by the parties. As those claims were the only ones before the district court on remand and as the parties agree that those claims were settled, there are simply no claims remaining in this case for the Court to address.

## III.  THE SETTLEMENT AGREEMENT REACHED BETWEEN THE PARTIES IS OTHERWISE BINDING AND ENFORCEABLE.

In her motions and briefing, Foster intimated that she believed the settlement agreement did not affect any future claims regarding the subject matter of this litigation. [Doc. No. 83 at unnumbered 1-2; Doc. No. 91 at 4-5.] At the evidentiary hearing, Foster for the first time explicitly claimed that she had not agree to release any claims other than her IDEA claim for "out-of-pocket expenses," and, implicitly, that the settlement agreement was therefore unenforceable because it included such a release. Defendants contended that the settlement agreement was valid and enforceable. "A settlement agreement is merely a contract between the parties to the litigation . . . . As such, the formation, construction, and enforceability of a settlement agreement is governed by local contract law." *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). "Under Illinois law, a settlement is valid if there is an offer, acceptance and a meeting of the minds." *Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010).

### A.  Foster's Attorney Had Authority To Sign The Settlement Checklist on Foster's Behalf.

Foster does not argue that there was no offer of settlement; instead, she contends that there was no acceptance or meeting of the minds because she did not consent to the release of claims contained in the settlement agreement and, therefore, that settlement counsel exceeded her authority in accepting those terms. "[P]arties are bound to the actions of their chosen agent, even for such an important matter as a settlement." *Elustra*, 595 F.3d at 709; *see also Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 233 (Ill. Ct. App. 2010). Under Illinois law, however, an attorney must receive a client's express authorization to settle a case on her behalf. *Magallanes v. Illinois Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir.2008); *Brewer v. Nat'l R.R. Passenger Corp.*, 649 N.E.2d 1331, 1334 (Ill. 1995). This rule arises from the proposition that "[t]he authority of an attorney to represent a client in litigation is separate from and does not involve the authority to compromise or settle the lawsuit." *Brewer*, 649 N.E.2d at 1333-34.

Foster initially proceeded in the district court and on appeal as a pro se litigant; on remand from the Seventh Circuit, Foster was appointed counsel for assistance in settlement negotiations, an appointment to which Foster consented in July 2015. [Doc. No. 80] The settlement agreement was reached at a settlement conference which both parties attended with their attorneys and which was supervised by the Court. Throughout the settlement conference, Foster was freely able to consult with her attorney. At the end of the settlement conference, the parties reached an agreement which they memorialized on the settlement checklist provided by the Court.

Despite the settlement checklist, Foster in her filings had argued that she agreed to a settlement only with respect to "out-of-pocket" IDEA claims. At the evidentiary hearing, however, she clarified that—although she had been present at the settlement conference and had actively participated in negotiations leading to the preparation of the settlement checklist—she contended that she had not consented to the release of claims contained therein:

> The Court: And, at the time of the settlement, you had a chance to review the settlement checklist –
>
> Foster: No, I did not.
>
> The Court: – with [settlement counsel]?
>
> Foster: No, I did not.
>
> The Court: So [settlement counsel] didn't go over it with you?
>
> Foster: No, she didn't.
>
> The Court: And you didn't sign-off on it?
>
> Foster: No, I did not.
>
> The Court: And [settlement counsel] signed off on it?
>
> Foster: Yes, she did.

[Tr. at 8-9.]

This account of the proceedings, however, conflicted with the accounts given by Foster's settlement counsel and by Defendants. Foster's settlement counsel testified that she had in fact reviewed the terms of the agreement with Foster, and that counsel had signed the checklist—which conformed to those terms—with

15

Foster's authority. [Tr. 9.]

Counsel:        So at the conclusion of the settlement Dr. Foster and I discussed what the terms of the settlement would be. I asked if she would like to stay so we could review the settlement checklist before – before closing. She decided to leave. She said that she would prefer to leave, and she gave me authority to sign-off on her behalf. I reviewed the claims produced on the settlement checklist. It was in alignment with what we had discussed, and so I signed on her behalf based off of – based on the authority that she gave me prior to leaving.

The Court:      All right. So it is your statement to the Court that your signature on the settlement checklist represents what – the authority you believe that you had from Dr. Foster?

Counsel:        Yes.

[Tr. 9.] In their filings, the Defendants stated that, at the settlement conference, the parties had reached an agreement with Foster's active participation, which the parties presented to the Court, and after which the settlement checklist had been signed by settlement counsel with Foster's authority. [Doc. No. 90 at 1-2.] After listening to settlement counsel's statements at the evidentiary hearing, the Defendants stated that they had nothing to add. [Tr. 5.]

The Court does not find Foster to be credible as to her assertions that the settlement agreement reflected in the settlement checklist was outside the scope of the authority that she had given to settlement counsel, or that Foster did not have knowledge of the terms of the agreement as represented in the checklist prior to counsel's signing. Instead, the Court credits settlement counsel's statements, which establish: that counsel discussed the terms of settlement memorialized in the checklist with Foster; that Foster agreed to those terms; that counsel asked Foster

16

if she wished to sign the settlement checklist herself; and that Foster gave counsel the authority to sign the checklist on her behalf. This account is also corroborated (and Foster's testimony thereby contradicted) by Defendants' assertions.[4]

While under Illinois law an attorney must have express authority to settle a claim on behalf of a client, the burden of proving the attorney's authority to settle lies differently depending on the nature of the settlement agreement: "Where a settlement is made out of court and is not made a part of the judgment[,] . . . [t]his authority will not be presumed and the burden of proof rests on the party alleging authority to show that fact." *Brewer*, 649 N.E.2d at 1334. However, "the existence of the attorney of record's authority to settle in open court is presumed unless rebutted by affirmative evidence that authority is lacking." *Id.* (citing *Szymkowski v. Szymkowski*, 432 N.E.2d 1209, 1211 (Ill. Ct. App. 1982). These differing burdens derive from a principle—based on the equitable doctrine of apparent authority—that, "where a party silently stands by and permits her attorney to act in her behalf in dealing with another in a situation where the attorney may be presumed to have authority, the party is estopped from denying the agent's apparent authority as to third persons." *Szymkowski*, 432 N.E.2d at 1211; *cf. Plamintr v. Phra Warasak Worathammo*, 2015 IL App (2d) 140312 U, 2015 WL 1137625, at *5-6 (Ill. Ct. App., Mar. 11, 2015) (applying presumption against agency in off-the-record settlement conference where "[a]lthough the judge, in a sense,

---

[4] The account provided by settlement counsel coincides directly with this Court's recollection of the events.

presided over the settlement conference, which obviously concerned judicial business, [the client] was not present at the conference. Accordingly, it would be unfair to presume that [the attorney] had the authority to agree to dismiss [the client's] individually filed claims.").

In this case, the settlement agreement did not technically take place in "open court" on the record. But the execution of the settlement term sheet immediately upon conclusion of the oral settlement agreement was effectively the same as reading the agreement—which was reached while both parties were present with their attorneys and after a lengthy negotiation which took place under the supervision of the Court—into the record. And the parties were aware that, on consummation of a settlement agreement, the settlement checklist would be filled out and signed and an order would be entered reflecting that fact, which indeed took place. [Doc. No. 81.] This, then, is not a situation in which existence of counsel's authority to settle is evidenced only by the statements of counsel herself or where the agreement was reached without the client's participation and without court supervision. *Cf. Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 1000 (7th Cir. 2001) ("A very different situation is presented here, where the alleged (written) settlement occurred outside of court, in the client's absence."); *Blutcher v. EHS Trinity Hosp.*, 746 N.E.2d 863, 870 (Ill. Ct. App. 2001) (affirming vacating of settlement agreement where "the very basis of [party's] claim [was] that he did not sign the settlement agreement or the release" and party signed affidavit attesting "he was completely unaware of ongoing settlement negotiations [and was not]

18

aware of the consummated agreement."). Instead, as all parties here agree, Foster was present at the settlement conference, actively participated in the negotiations, and left only after giving counsel full authority to sign the settlement checklist.

In these circumstances, the burden properly rested on Foster to disprove the assumption that settlement counsel was acting as her agent, a presumption which she has failed to rebut. Crediting settlement counsel's testimony and Defendants' assertions, Foster was aware of the terms of the agreement and granted express authority to settlement counsel to sign the final document arising from those negotiations. Accordingly, the Court finds that settlement counsel was proceeding within the scope of her authority in signing the settlement checklist, and Foster is therefore bound by that agreement. *See Maxey v. Monahan*, 478 F. Supp. 2d 1044, 1050-51 (N.D. Ill. 2007) (finding party bound by out-of-court settlement agreed to by party's attorney where the "Court discredit[ed party's] . . . after-the-fact attempted disclaimer of authority" and instead credited party's counsel's statements "as an accurate reflection of the authority that [the client] had in fact conferred on her.") (internal citations omitted).

**B.** **Authority Aside, Foster Formed A Valid Oral Contract Prior To Leaving The Settlement Negotiations.**

Even had settlement counsel not had Foster's express authority to sign the settlement checklist, however, the facts in this case show that Foster herself agreed to the settlement prior to the signing of the checklist. "In Illinois, '[a]n oral agreement to settle will be enforced as long as there is clearly an offer and

acceptance of the compromise and a meeting of the minds as to the terms of the agreement.' " *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995) (citation omitted). The party seeking enforcement of the contract bears the burden to "prove the essential terms of the agreement sued on; that is, the offer made and its acceptance." *Richco Plastic Co. v. IMS Co.*, 681 N.E.2d 56, 59 (Ill. Ct. App. 1997).

In this case, Foster does not dispute that a contract was formed at the close of the settlement negotiations; instead, as discussed above, she contends that—although she had been present at the settlement conference and actively participated in negotiations leading to the preparation of the settlement checklist—she did not agree to the terms of settlement as outlined in the checklist, specifically the release of claims. Foster's settlement counsel, however, testified that she and Foster "discussed what the terms of the settlement would be," and that Foster agreed to those terms of settlement but simply chose to leave rather than await their formalization in writing. [Tr. 9.] Furthermore, counsel "reviewed the claims produced on the settlement checklist," which were "in alignment with what we had discussed." *Id.* Again, settlement counsel's testimony is confirmed by Defendants, who stated in their filings that, "[a]t the conclusion of the settlement conference, the parties represented to the Court that they had settled this litigation and their disputes, thanked the Court for its efforts to help them reach their settlement, and represented that they would reflect the terms of their settlement in

writing on a settlement checklist/term sheet . . . ."[5] [Doc. No. 90 at 2.]

Crediting the statements of Foster's settlement counsel and Defendants, the Court finds that a valid oral settlement agreement was formed when Foster agreed to the terms of the contract and communicated that agreement to Defendants. "Whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). Based on the objective conduct of the parties, the negotiations in this case led to an oral agreement by Foster as to the terms of settlement which was communicated to the defendants and ultimately memorialized in the settlement checklist, which represents the terms orally agreed to. "The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary promise," *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992), and after entering into this agreement at the settlement conference, Foster now may not disclaim its existence. "Post-acceptance conduct does not retract an earlier acceptance. The simplest explanation of [Foster's] behavior is buyers' remorse . . . ." *Elustra*, 595 F.3d at 709. Furthermore, "a party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement is insufficient." *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 863 (7th Cir. 1986). Settlement counsel's authority to sign the settlement checklist aside, Foster had already orally accepted a valid settlement before she left the settlement

___

[5] The Court, in fact, was present when Ms. Foster gave her oral agreement to the terms of settlement.

conference, and the settlement agreement may also be enforced on that basis.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the district judge deny Plaintiff's Motion to Amend and Redress Plaintiff 1983 Claim [Doc. No. 82] and Motion for Clarity of Judge Maria Valdez Ruling [Doc. No. 83] and grant Defendants' Motion to enforce settlement agreement. [Doc. No. 90]

The parties have fourteen days from the date of service of this Court's Report and Recommendation to file objections with the District Court. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *See Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).


**SO ORDERED.**                                    **ENTERED:**


**DATE:   ___December 8, 2015_____**       _____
                                             **HON. MARIA VALDEZ**
                                             **United States Magistrate Judge**